Good morning, Your Honors, and may it please the Court. My name is Justin Curley, and I am here on behalf of Defendant Appellant VibrantCare Rehabilitation, and I would like to remain to reserve four minutes for rebuttal. As set forth in our briefing, the District Court's order of remand should be reversed for three separate reasons, which I will discuss in turn, also addressing Plaintiff Appellee's arguments in response to these arguments. First, the District Court held VibrantCare to an erroneous, heightened burden of proof, specifically a preponderance of the evidence standard, when all Plaintiff did in her motion to remand was mount a facial attack. Here, given that Plaintiff Appellee only mounted a facial attack without submitting her own evidence... Why does she need to submit her own evidence for this to be more than a facial attack? That is to say, there was evidence, and why is this not an attack then as applied instead of facial? She doesn't necessarily need to submit her own evidence, Your Honor, and that gets to the Harris decision. She has to provide some sort of reason, argument why there shouldn't be any truth attributed to... But I think she's relying on the evidence that you provided, so I don't think it's facial. I think it's looking at the evidence that's in the record, and it turns out it's your evidence. She said, on your evidence, you lose. A facial attack, a factual attack would be her own evidence, and our evidence, in fact, submits with the deposition testimony, discovery responses... No, that goes back to my question then. When it's a factual attack, why does she need to introduce evidence when, in her view, or in their view, I should say, the evidence that you've submitted means you lose? Those are facts. It turns out they're facts you introduced, but you lose. Why is that not a factual attack? Because under relevant case law, Your Honor, a factual attack is providing contrary evidence. Contrary evidence providing your evidence. That's the normal paradigm. I guess you're not taking my point. In your view, to be a factual attack, it has to be your evidence rather than the other person's evidence? To be a factual attack, it has to be their evidence, in the normal course, or a reasoned argument why our evidence shouldn't be given any... attributed any truth. That's the relevant case law under Salter and Harris, Your Honor. I disagree with you, but I've not talked to my colleagues on the point, yeah. Thank you, Your Honor. So without submitting her own factual evidence, a district court should have followed the court's decision in... the Ninth Circuit's decision in Salter v. Quality Carriers. That is, that a removing party need only provide a plausible allegation that the amount of controversy exceeds the jurisdictional threshold. Instead, the district court here erroneously applied a heightened preponderance of the evidence standard. So plaintiff appellee here acknowledges that she did not introduce any contrary evidence challenging appellant's substantial factual showing. However, she argues that she nonetheless has mounted a factual challenge because she asserts that she has challenged the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why assumptions on which those were based are not supported by evidence. In support of this point, she relies on the court's decision in Harris v. KM Industrial and attempts to analyze the facts of this case to those presented in Harris. However, Harris is in opposite. In Harris, in opposing CAFA jurisdiction, the plaintiff challenged the truth of the employer's allegation that all hourly employees... all hourly... I'm sorry, excuse me. The all hourly employee class members work shifts long enough to qualify for meal and rest periods. Critically, the plaintiff in Harris had alleged meal and rest break subclasses that were defined by the numbers of hours the subclass members worked in a shift. In contrast here, your honors, plaintiff here has alleged no subclasses as the plaintiff did in Harris. All putative class members in this action have been lumped together in only one putative class by the plaintiff and defined only by their status as an hourly employee. In addition, the employer in Harris provided no factual showing at all about shift lengths. The employer did not provide any evidence at all about shift lengths, despite the fact that the plaintiff had defined his meal and rest break subclasses based on shift lengths. Here in stark contrast, Vibrant Care has provided evidence about shift lengths for each of the employee groups at issue, and that's set forth in paragraph 9 of the Tanconi Declaration, subparagraphs A and D. Specifically, paragraph 9 of the Tanconi Declaration provides hours per week, shifts per week, and shift length information for each employee group, and demonstrates that all employee groups worked meal break and rest break eligible shifts, as well as daily overtime eligible shifts at a minimum. Accordingly, Harris is an opposite, and it is not safe, plaintiff, from the reality that there was nothing factual or substantive about her motion to remand. Indeed, she plainly applied the incorrect standard for notice of removal in her papers, contending that Vibrant Care was required to provide, quote unquote, summary judgment type evidence, rather than a short and plain statement supporting removal. And she also made repeated mischaracterizations or miscalculations about Vibrant Care's conservative violation rates, erroneously calling, for example, a 40% violation rate a 200% violation rate. Here, even on appeal, plaintiff merely takes issue with the reasonable conservative assumptions used by Vibrant Care, specifically that Vibrant Care used the same unpaid wages and meal and rest break violation assumptions for full-time employees, as it did for employees who may not have always worked full-time. Can I interrupt? Sure. When I see what happens with the Tanconi Declaration, and then with what the District Court did, with respect to part-time and per diem employees, the District Court said, you know, there's just insufficient evidence here. It's so unsupported that I treat that as speculative, and I will put that to one side. Assuming that this is a factual attack rather than a facial attack, was the District Court wrong to set aside any damages claimed as to part-time and per diem? Absolutely, Your Honor. Absolutely. Why? Because there is, he totally disregarded the Tanconi Declaration, even though it's substantive evidence. No, he was focused on the Tanconi Declaration. And he said, the District Court said, with respect to part-time and per diem, there's just insufficient support of all the assumptions that are made, because the Declaration treats the part-time and per diem as basically equivalent to the full-timers. Your aim is... I didn't hear you. Oh, the Tanconi Declaration treats, this is now in the view of the District Court, and I'm inclined to agree, that the Tanconi Declaration treats the damage calculation or the violation calculation for the part-time and per diem in precisely the same way as he treats them for the full-time employees. Is that wrong? It wasn't, while, there's no violations rates stated in the Tanconi Declaration. It's just, it's just defining the different employee groups and the average, you know, shift information for those groups. Isn't, wasn't the District Court correct to say that these are part-time and these are per diem, and California law does not require you to pay those employees overtime or give them meal breaks unless they work a certain number of hours, and there's no evidence in here that they, of the hours that they've worked, which would entitle them to those sums. Correct, Your Honor. He did state that, but he's, but he's incorrect on that point, because she does have shift information in her Declaration. Shift information, and how do we glean from this Declaration that the amount of money they would be owed based on the number of hours that they worked? Based on their shift lengths. For example, it states in there that they typically work, for example, 32 to 40 hours a week for some folks, right? Some folks maybe worked two to three shifts per week.  So, so for those folks that were always 40 hours a week, sure, they, they, they would have weekly overtime in addition to entitlement of daily overtime. Which ones would those be, and how do we add it up? And the, and the, well, it's, it's subparagraphs A through D. Well, I'm looking at D, for example, and you say per diem, employees worked an average of 12 hours per week and 6 hours per day. So how much overtime and, take, just take overtime, how much overtime would they be entitled to under California law based on that? So if they worked, if, again, that, your Honor, you're pointing to an average shift length, so. So, so your, it's on you, it's your burden to show what that is quantifiable to, so that it meets your 5 million dollars of damages. So, yeah, so, your Honor, you're, you're, you're pointing to the, with a data point regarding average hours per week and average shift length, again, that's, that's average. However, they work any, up to 40 hours a week, composed of, of, of 5-8 hours a day. If they work a variety of different shifts, they're, they're per diem, so they are different in that respect. But they still, plausibly, work, what could earn daily overtime for an 8-hour shift, if they worked an 8-hour shift a particular week. Again, this is just, and I know the plaintiff focuses on this as well, but that was just a, an average shift length. But there are a lot of, there are a lot of ifs in there, if they worked an 8-hour shift, but I see very little to, to suggest that they actually did. And we were talking among the part-time and the per diems. Well, the, the, the part-time, for example, worked an average of 32 to 40 hours per week. I mean, that, that's 4 to 5, 8-hour shifts. So that's daily overtime at a minimum, for potentially, you know, 4 to 5 days. And so, one hour, just assuming one hour of overtime for that is, is very conservative, in fact. Very, that, you know, that's what Fibonacria did here. Those were actually very conservative assumptions. And so, I know, I know, and again, plaintiff focuses on that as well, of the per diem. But again, that's just one data point here, per diem, and that's only an average. It doesn't speak to, you know, daily overtime entitlement. And those shifts would also entitle them to meal and rest breaks as well. So again, the, the record here establishes that the, that those assumptions were entirely reasonable. Well, what the record, for me at least, what the record does not establish is how many of those part-time and per diem employees would fall in the category that you just described. I see nothing that tells me how many of the part-timers and per diems would do that. And Your Honor, that would go into time records, for example, right, for these folks, right? And that, in the, in the case of us here, we don't need to do it. We don't need to prove their case for them. We can make reasonable assumptions based on the key data points about shipping. Well, the district, the district judge said that your assumptions were unreasonable. How do you respond to that? Well, they were entirely, Your Honor, the reason he said that, the only reason he said that is because they're equivalent to some of the, the full-time folks, right? But there's nothing problematic about that whatsoever. In fact, the, take the, you could look at it through the prism that the, the, the assumptions for the full-time employees were actually very conservative. And then the, the assumptions relative to the non-full-time folks were just not as conservative as that. We, ViberCare easily could have used assumptions of three overtime hours per week, two overtime hours per week, four missed meal breaks per week. We, ViberCare did not do that. They took a very conservative approach. So why does it have to be assumptions when ViberCare is in possession of all the work records? And, and, and, Your Honor, that's a great question. And this was addressed in the Giroguet v. Roadrunner case. But I want to talk about this case. Sure. Because, again, our burden on removal, Your Honor, is not to provide time-punched records, literally where people could go through and count up violations, right? I mean, that, that'd be potential violations, that'd be tantamount to proving their case for them. And we, we, we're not obligated to do that, certainly on, not on removal at all. We can, we can just use the relevant data points and then make reasonable assumptions based on the plaintiff's allegations, which we've done here based on her complaint, which essentially alleged uniform violation rates, right? We could, we could have used 100% violation rates based on her allegations. And then we also used... And only the complaint.  The complaint and her interrogates. Correct. And the interrogations. And the interrogatories as well. Correct. Correct. She treats them, she treats part-time and full-time the same. That's absolutely right. The complaint says that all non-exempt employees work daily overtime before and after shifts and through breaks. And that is essentially repeated in the interrogatories, the sworn responses. That's exactly right, Your Honor. That's an important distinction versus the complaint, right? These are sworn discovery responses, essentially, that would support 100% violation rates, which... But again, Vibrant Care took a conservative approach. And there's nothing inherently problematic about taking a conservative approach and just using as shorthand the same violation rates for the entire employee population, especially when she lumps them all together and treats them all the same in her discovery responses and her complaint. In her, in the interrogatory, she says the defendant engaged in a, in a uniform scheme of wage abuse against the hourly paid or non-exempt employees within the state of California. And this scheme involved Interaglia failing to pay them for all benefits worked and all meals and rest periods that were not provided. Each day that plaintiff and other putative class members worked for the defendant, they worked each day. They worked overtime for which the defendants failed to compensate them. And that, there's no qualification about what type of employee or anything like that, yeah. That's not just the complaint, that's in a, in a, in a sworn interrogatory. But that's exactly right, that's a sworn interrogatory discovery evidence right there, which you rarely see in a removal, supporting a greater violation rate assumption that we, that Vibrant Care used in this case. So Vibrant Care easily could have made greater assumptions based on this evidentiary record, sworn testimony, deposition, and a discovery, as Your Honor pointed out, but did not, took a more conservative approach, but also applied it across the board to the entire population, which again was, is how plaintiff treated, treated the population. So again, I'll move on quickly as I'm running out of time here. Just a couple quick more points. Again the second argument, even if, even if a plaintiff did mount factual challenges, as Your Honor alluded to, Vibrant Care has put forth, has met its obligation to put forth a sufficient summary judgment type evidence, as Your Honor just referred to here, sworn declaration testimony, I'm sorry, sworn discovery testimony and written interrogatory responses that would, could be used in support of a summary judgment. What do you think the district court did wrong here? So totally, completely disregarded the per diem, yeah, taking issue with the fact that the members should have been plugged in for them. Exactly, well that's like the third thing that he did, that he did wrong, yes, he absolutely should have assessed some liability to that population. Just because you don't agree that it's not a max penalty or it's not this, there's obviously, that's obviously an issue. Essentially what the district court did here is he took a nine claim case and reduced it into a case about wage statements. Like that's absolutely not what this case is. This is a massive, you know, kitchen sink, if you will, wage and hour case alleging every single complaint, claim imaginable. And so obviously there is value associated with each of those claims. It seems to me the district court did make a mistake in disregarding the allegations and proof as to the full timers. I'm with you on that point, but I'm not sure I'm with you as to his disregarding the part timers and the per diems. I mean, that's where I break. Well, again, Your Honor, the reason he did that, again, was just because he took issue with the fact that they had, they were similar violation rates. But there's nothing inherently problematic with that at all, especially given the way this case has been pled and avert to and verified discovery responses from the plaintiffs. Again, there's nothing problematic about that, the fact that we, that Vibrant Care did that. And again, as Your Honors have pointed out, there is obviously some value associated with that claim. So we easily, we pled, we demonstrated $10 million. Even if you deduct those somewhat, we're still well over the $5 million threshold, and I believe I'm out of time. I mean, should he have disregarded all of the part time, even accepting the premise that you didn't say how many hours each one necessarily worked or, and... Absolutely not. He should not have disregarded them. But, you know, the numbers here, as you try to calculate it, are close to $5 million. And isn't it a fair assumption that a number of them actually got paid, or didn't get paid? I'm sorry. Absolutely, Your Honor. Absolutely. They needed to be accorded some value in this case. And they gave no, they were given zero value, even though... Zero value. Zero value. Which is completely contrary to this Court's decision in the Jirigawi v. Roadrunner case, which also stands for the proposition that you inherently, you have to rely on some kind of reasonable assumptions and removals, that again, the defendant's not required to prove liability on removal. So yes, absolutely, that case supports reversing the District Court's order here, and I'm well over time, so unless you have any other questions... We're over your time. Thank you, Counselor. Thank you, Your Honors. Ms. Goldsmith. Good morning, Eileen Goldsmith for plaintiffs. The issue in this appeal is whether or not the District Court committed clear error in finding that the amount in controversy is less than $5 million. And we've shown in our brief that the order should be affirmed for either of two reasons. First, essentially, VibronCare is just asking the District Court to weigh the evidence that was submitted differently from how the District Court weighed that evidence, and that's not consistent with the clear error standard of review. But second, even if the Court... I'm sorry, I may be confused, but does your interrogatory count as evidence? Yes, it does count as evidence. But your complaint is, after all, an admission, doesn't that count as evidence? That counts as another data point that the District Court can consider. But this Court, applying a clear error standard of review, doesn't reverse if it disagrees with how the District Court weighed the evidence. It has to be a much higher standard to reverse for clear error. And so what did the District Court have here? It had the complaint. It had the Tanconi declaration. It had various discovery responses that were served two months after the case was filed with very detailed and thorough objections stating that this is what we know now based  on our experience. And essentially what Vibrant Care is saying is, disregard the declaration that we put in. Ignore that and ignore its flaws and look at all this other stuff. And the District Court didn't have to do that. Once Vibrant Care placed all of those detailed facts about the Tanconi declaration at issue about part-time employees, per diem employees, these are employees who made up more than half of the class and nearly 60% of the work weeks in the class. What we usually see in these CAFA removal cases is actually in these wage and hour cases where shift length is really critical under California law to determining whether there is or is not even a potential claim. You usually see the defendants put in that information about shift lengths in their notice of removal and the support for their notice of removal if it's challenged. Here Vibrant Care had two chances to do this and they didn't do it. They just put in these ranges for part-time employees. These part-time employees worked a range of hours and averages that bear no obvious relationship to those ranges. And it really begs the question when you look at the, say, more than 300 per diem employees who worked a range between zero and 40 hours a week. That's a big difference. Can I interrupt? Did the District Court make a mistake in setting at zero the claims with respect to the full-time employees? Okay. I think it's arguable on that point, but then that would just beg the question of what's a reasonable and better assumption to make for the full-time employees. And we showed in our brief why Vibrant Care's contention that the amount of controversy would still exceed $5 billion is wrong. I'm sorry. I didn't quite follow you. Are you saying that it's wrong assuming that full-time employees do count? So I'm not sure you quite answered my question and maybe you don't really want to say a full yes or no, but it strikes me that the District Court made a mistake in putting at zero the claims as to the full-time employees. Right. What this Court said in Haurigee, which came out after this motion had been submitted, and as far as I can tell from the record, nobody brought that to the Court's attention. What this Court said in Haurigee was if the District Court can make a better assumption than the one that it rejected, it should apply that better assumption. Here I think it's debatable whether the District Court could have made a better assumption, but even— You know, what strikes me is it's hard to debate. What argument is there in favor of the District Court saying, I'm going to put aside any claims made as to the full-time employees? I mean, I just don't get it. Okay. Even if the District Court should have made a better assumption, those better assumptions are manifest on the record. And it would simply be—we're not even, for purposes of this discussion here, we're not even suggesting that the violation rates for the full-time employees were incorrect or were not reasonable. But they should have been included. Yes. You have to concede. Sure. They should have been included. They shouldn't have been zeroed out. Because they were—you were alleging violations as to them very clearly. Yes. Okay. So now you concede that. So let's go. Shouldn't—so the next question is, shouldn't per diem and part-time have been included to some extent, given that some of them, according to the Ticconi Declaration and certainly according to your complaint and the interrogatories, also didn't get a certain amount of overtime and other wage and hour benefits that they were due? No. Because there's no way to—there's no way for the Court to make a better assumption on this record. There's no way for the Court to make a better assumption for the part-time employees. A better assumption than zero. It's not that the claim is—has no value. It's that the Court doesn't have the evidence in front of it to figure out what that value is. I'm just making it up hypothetically. Suppose we were X number of dollars away from $5 million, and I'll use the word close enough. Is it reasonable to assume that these people—there were violations as to these people? You allege it, that those violations would be sufficient, even though they're not detailed in the way you suggest, to put it over a very close difference? So two responses to that, Your Honor. Assuming there is. I'm not saying there is, but assuming that you were dealing with a fairly close difference between $5 million and a lesser number, and here you have a category of employees for whom you could fairly assume they were violating the various statutes, and the district judge gives them nothing when the—it's a fair assumption that they must have gotten something. And what if, again, suppose you're just close enough? I'll use that word. Well, first of all, this is about the subject matter jurisdiction of the federal courts. And so every court has a duty to assure itself that it has subject matter jurisdiction before it proceeds. Here, just proceeding off of plaintiff's complaint, I think the court has to interpret the complaint consistent with the applicable law. So— It's not just the complaint. It's your own—it's the interrogatories that you filed. Right. And as I mentioned earlier, the interrogatories were served two months into this litigation with appropriate objections regarding the state of discovery and investigation in the case. So are you willing to give up any claims as to the part-time and per diem workers as to any labor law violations? I'm just saying that the evidence in the record does not support the court picking any particular violation right for those people out. You think they have some value, right? Yes. They have some value. But the record at this point doesn't provide the district court anything tangible to figure out what that would be in a reasonable way. Well, let me follow on from this. Even on your calculations, we're pretty close to $5 million once we say that the district court erred in setting aside the full-time workers. It seems implausible that there's so little there with respect to the per diem and the part-timers that you're not going to get over $5 million. And I hadn't quite heard you say, oh, we're not going to claim that when we get to trial. What am I supposed to do with that? Right. Well, that happens in every case. But I'm talking of this case, okay? Going back to this court's decision in Harris, the court was very clear in saying that if the district court rejects those assumptions as unreasonable, it shouldn't be making its own assumptions from an inadequate record. And that's what the district court has here, is an inadequate record about the part-time and per diem employees. And I keep coming back to this, but those people make up more than half of the class here. Would that be cut against you? Because with all those people in there, and the only amount you really need to make up is pretty small, the bigger that class, the worse your argument. No, I think it's exactly the opposite, Your Honor. Because we've got overtime claims under California law require either shifts longer than eight hours or more than 40 hours in a week. And those part-time and per diem employees really, there's no information here about how long their shifts are. Some of the claims that Tanconi makes in her declaration makes it very clear that those people don't, she's not even assuming that they have shifts that are long enough. She's assuming two six-hour shifts per week, for example, for those people. And that would rule out. But once you do that, that kicks in the meal claims. Right. And so, you know, if you want to look at people who worked, she gives a range of, I believe, eight to 32 hours or something for one of these groups. I'd have to check back. But if it's eight, and they work twice a week, they're not going to have a meal break claim. Maybe they're going to have rest break claims. They're not going to have daily overtime claims. But the point is, it's worth something. Yes. And so, because we know that they have those claims, and we know it's worth something, that should be accounted for somewhere in this calculation. The problem is that the district court can't just pull that number out of the air. And there's not sufficient evidence here to allow the district court to pick a number. Right. And that it is kind of ironic that when, if you go back to state court, you're going to be proving up those claims to the max, and most certainly will exceed $5 million. And what you're really asking for him to do on, the other side to do on the removal motion is to give you the data from which you can calculate the damages for your case. And that's the specificity you're suggesting is required. No. No. I'm not saying that they have to give plaintiffs the data to prove their case. Shift length data only defines the realm of possibility for these claims for overtime for meal and rest. It doesn't define in any way whether there were violations in those shifts. It just says, here are the number of shifts where there might be a claim because this person worked, you know, was scheduled for an eight-hour shift, therefore there's a possibility that they could have gotten daily overtime. And that's why I was saying earlier. But in order to do that, and I'm kind of coming back, I guess, to the point initially made by Judge Corman, you're backing away from your complaint. Are you disavowing that part of your complaint? The complaint, I think you have to look at this, the court looks at removal at the time of removal. In this case, removal was two and a half years into the case after there had already been quite a bit of discovery. And what we start, you know, plaintiff's, excuse me, plaintiff's responses to that discovery are very, very early because of when defendants served contention interrogatories. But you have to construe that complaint consistent with the law. That complaint, there's nothing in the complaint that says we want something that we can never ever have because, for example, for people who never worked shifts long enough to qualify for meal breaks, I don't think the court can be interpreting the complaint to be asking for, as plaintiff, asking for something that they could never have. There has to be some sort of legal reality tethered to that. Well, what was the information and belief that you made that allegation in the complaint? And then, I know you have all these qualifiers, there were the interrogatories that came after the complaint that are consistent with the complaint. We're in a very, very early stage of the case. At that point that those discovery responses were served, plaintiff did not yet have broad class data about all the people in the class. Well, that didn't stop you from, you know, it always bothered me that people can allege everything on information and belief, but you presumably, you presumably believe that you're going to collect damages for these part-time people and you obviously made a And I just don't understand how you give them zero, where the calculations are so close. So, in my, on my hypothetical, we're almost at five million, and you're getting another advantage, by the way, with an average minimum wage calculation, which varied over time, which could have been, may not even have been, may not even be accurate. I mean, I'm just troubled by, I'm just troubled by what I've indicated in my questions and I'll leave it at that. And if I could just respond very briefly. It is not the job of the court to boost the amount in controversy to allow the case to stay in federal court. It is the job of the defendant to establish that the case should be in, the removing defendant to establish that the case should be in federal court. Well, but you're, the way you're arguing it is as if we're having a trial. We're essentially having, it's just having a trial. It's like a summary judgment motion. The case law does require the removing defendant to support its, to support its position by a preponderance of the summary judgment. I think there's absolutely competent evidence, not only the complaint, but the interrogatories to support the notion that they violated the law with respect to these part-time people. And one doesn't have to get to a large amount to put the total over 5 million. And, and just to conclude, since I'm way over time, it's the job of the defendant, not the court, to, to establish that. And there was not sufficient evidence here to support defendants' claimed amount in controversy. Thank you. Thank you, counsel. Williams v. Vibrant Care Rehabilitation will be submitted.
judges: WARDLAW, FLETCHER, Korman